**In re PETERSEN, R. Kirk and Petersen, Sally, Debtors.**

**Bruce WILLIAMS and Marsha Williams, Plaintiffs,**

v.

**PETERSEN CONSTRUCTION, R. Kirk Petersen and Sally Petersen, Defendants.**

**Bankruptcy No. 93–03611.
Adv. No. 94–6224.**

United States Bankruptcy Court, D. Idaho.

Nov. 8, 1994.

Kenneth D. Roberts, Roberts & Robinson, Caldwell, ID, for plaintiffs.

Laura E. Burri, Ringert Clark, Chartered, Boise, ID, for defendants.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

The plaintiffs' "second amended complaint to establish dischargeability" seeks a judgment of nondischargeability under the provisions of 11 U.S.C. § 523(a)(4) and (6)[1], and

---

1. 11 U.S.C. § 523(a)(4) and (6) provides in part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
\* \* \* \* \* \*
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
\* \* \* \* \* \*
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
11 U.S.C. § 523(a)(4) and (6).

11 U.S.C. § 727(a)(2)[2], the embezzlement, malicious injury to property, and concealment of assets exceptions to discharge. Defendant Sally Petersen has been dismissed from the case. The remaining debtor Kirk Petersen denies the existence of any grounds to deny his discharge, wholly or partially, and requests the plaintiffs' complaint be dismissed. All parties request costs and attorney's fees. Trial was concluded on August 24, 1994.

## FACTS

The debtors, Kirk Petersen and Sally Petersen filed their chapter 13 petition on December 30, 1993. The case was converted to a case under chapter 7 of Title 11 on January 13, 1994. The conversion occurred as a result of the debtors' inability to continue their construction business.

Prior to starting the construction business, Kirk Petersen and the plaintiff Bruce Williams were both employees for a business known as "Rath Framing". A friendship developed. Both Bruce Williams and his wife Marsha Williams helped Kirk Petersen get started in his construction business, and made several personal loans to him to help support the business.

In February of 1993, Kirk Petersen obtained a loan from West One Bank to start Petersen Construction. In July of 1993, the loan was reconstructed from a line of credit personal loan to a commercial security agreement. Marsha Williams was a guarantor on the loan.

On December 17, 1993, a few days before the debtors filed their chapter 13 petition, the loan was assigned by West One Bank to Bruce and Marsha Williams along with the security agreement Kirk Petersen had executed in favor of West One Bank to obtain the loan. The assignment of the note and security agreement was occasioned by the fact the Williams had paid off the loan to West One Bank after Kirk Petersen's default. As a result of the assignment the Williams became the secured creditors of the Petersens. The unpaid amount of the note at the time of the assignment was $21,934.03. The note was secured by the assets of Petersen Construction Company, consisting of personal property. This property consisted mainly of office equipment, computer software, and tools used in the construction business.

Debtor Kirk Petersen continued the construction business after the debtors filed their chapter 13 petition in late December of 1993. The day after filing the chapter 13 petition, on December 31, 1993, he pawned two Paslode nail guns at a local pawn shop in Boise, Idaho. On January 14, 1994, he pawned a Paslode stapler and a Duo-fast stapler; on January 19, 1994, he pawned a Due-fast nail gun, a Paslode nail gun and a Porter table router; on February 11, 1994, he pawned a DeWalt chop saw. According to the testimony of plaintiff, Bruce Williams, these items had a fair market value of $3,362.00.

Although some periodic interest payments were made on the pawns by the debtor or his brother, defaults ultimately occurred and the tools were sold by the pawn shop.

Various other tools disappeared from the tool inventory. Kirk Petersen claims the missing tools were either stolen by his employees or were consumed in the normal course of business. The evidence shows Mr. Petersen gave an employee, John Fahrer, tools since he was unable to pay Fahrer with cash. According to the values listed by the debtors in their chapter 13 schedules, the value of the missing tools is $1,051.25.

## DISCUSSION

■ The issue of dischargeability must be resolved on the basis of each individual debt-

---

**2.** 11 U.S.C. § 727(a)(2)(A) & (B) provides in pertinent part:

 (a) The court shall grant the debtor a discharge, unless—

 \*　　\*　　\*　　\*　　\*　　\*

 (2) The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

 (A) property of the debtor, within one year before the date of the filing of the petition; or

 (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A) & (B).

or's conduct. *In re Littleton*, 942 F.2d 551 (9th Cir.1991). The debtor's conduct in this case will be evaluated under each of the three allegations contained in the complaint, summarized as embezzlement, destruction of property, and concealment of assets.

## I. *EMBEZZLEMENT*

Embezzlement in the context of nondischargeability is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come". *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1885). The three elements of embezzlement in the nondischargeability context are "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than [it] was entrusted; and (3) circumstances indicated fraud". *In re Littleton*, 942 F.2d 551, at 555, quoting, *In re Hoffman*, 70 B.R. 155, 162 (Bankr.W.D.Ark. 1986).

 In this case, Kirk Petersen's conduct did not consist of such circumstances that would indicate the presence of fraud or that he acted with fraudulent intent. The fact some of the tools were missing from the inventory or were not listed in the debtor's petitions, does not amount to a showing of fraud in the instance. The fact the debtor or his brother paid interest on the tools in an effort to save them indicates the absence of any fraudulent intent in the pawning of the tools. Judgment will be entered for the defendant on this cause of action.

## II. *MALICIOUS DESTRUCTION OF PROPERTY*

 According to the provisions of 11 U.S.C. § 523(a)(6) the required injury by the debtor to the property of another entity must be "willful and malicious". Under the rule of *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986) "the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the others injury," constitutes willful and malicious injury. The debtor's conduct in selling the tools was a willful act. The more difficult question is whether the action

of Kirk Petersen in pawning the tools was malicious. According to *Cecchini*, to satisfy the malicious requirement, it is only necessary to show the debtor committed a wrongful act which necessarily produced harm and was without just cause or excuse. Mr. Petersen's actions produced harm, the remaining issue is whether the acts were committed without just cause or excuse. The debtor contends the pawning was done with just cause and that he had a justifiable excuse since he was attempting to obtain funds to continue the business. The debtor argues he was doing no more than the debtors in the *Littleton* case since he was disposing of secured property in an effort to keep his business going.

 A distinction is the fact the debtor was disposing of the very tools which were essential to the continued operation of the business. The lack of concern as to the continued operation of the business as the tools were being pawned leads to the conclusion the debtor had an indifferent attitude concerning the loss of the plaintiff's property. Further, the inventory of other tools, not pawned, was severely diminishing. It is thus wondered how the debtor was planning to keep his business going without tools. While such conduct does not amount to fraud, this conduct was malicious.

It is thus found the tools were pawned without just cause or excuse. This amounts to malicious destruction to the plaintiff's property. The fact some of the tools were missing, however, does not of itself indicate, and the evidence does not show any other facts which would indicate, the actions of the debtor regarding the missing tools constituted malicious destruction of property.

According to Mr. Williams testimony, the fair market value of the pawned tools was $3,362.00. Judgment will be entered in favor of the plaintiffs in this amount.

## III. *CONCEALMENT OF PROPERTY*

 The plaintiffs have failed to prove that the debtor Petersen transferred, removed, destroyed, or concealed property of the estate with the intent to hinder, delay or defraud a creditor as required for a decree of

nondischargeability under the provisions of 11 U.S.C. § 727(a)(2)(B). While the plaintiffs have shown certain tools were lost to the estate prior to, and after, the filing of the debtor's chapter 13 petition, such evidence is not sufficient to warrant a discharge of all the debtor's debts under section 727. It has also been found the debtor did not act with fraudulent intent. Judgment will be entered in favor of the defendants on this cause of action.

This memorandum shall constitute formal findings of fact and conclusions of law. Counsel for the plaintiffs may prepare and submit an appropriate form of judgment in accordance with this memorandum. No attorney's fees will be awarded.